**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| SANTOS ESPARAZA, JR. | § | |
| VS. | § | CIVIL ACTION NO. 9:17-CV-45 |
| JOHN KUYKENDALL, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTIONS OF KUYKENDALL, DEES, AND MANNS

Plaintiff Santos Esparaza, Jr., a prisoner previously confined at the Gib Lewis Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983 against John Kuykendall, Michael Dees, Charles Manns, Jr., unidentified employees, and employees who have previously been dismissed. He alleges that the use of excessive force by Defendants violated his Eighth Amendment rights. He also, somewhat vaguely, claims violations of his rights under the Fourth and Fourteenth Amendment. He appears to sue all these Defendants in their individual and official capacities seeking monetary damages, punitive damages, and, liberally construed, declaratory and perhaps injunctive relief. (Doc. #1)

Defendants Kuykendall, Dees, and Manns filed a motion for summary judgment.[1] (Doc. # 24). Plaintiff has had ample opportunity to respond. In response to Defendant Flowers's motion for summary judgment (Doc. #28), which was filed after the motion under consideration, Plaintiff

---

[1] Although the unidentified defendants have not been served and have not joined in the motion, the motion for summary judgment inures to the benefit of those defendants as well. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from the summary judgment motion filed by appearing defendants).

1

filed Plaintiff's Statement of Disputed Factual Issues (Doc. #52), Plaintiff's Brief In Opposition to Defendant's Motion for Summary Judgment Motion (Doc. #53) and Declaration In Opposition To Defendants' Motion For Summary Judgment. (Doc. #54). Each of these three specifically address themselves to the deliberate indifference claim asserted against Defendant Flowers. But, Plaintiff filed no response to the present motion for summary judgment filed by Kuykendall, Dees, and Manns.

The failure of a party to respond to a motion "creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." E.D. Tex. Local Rule CV-7(d). However, the court will determine whether a motion is properly presented and supported, and will not rule against a party solely for failing to respond to a motion. *See Johnson v. Pettiford*, 442 F.3d 917, 918–919 (5th Cir. 2006). Nevertheless, as Plaintiff is a prisoner appearing *pro se*, the court reviewed all documents on file, including those addressed to Flowers's motion, to determine whether they provide information relevant to his claims against the Defendants who filed the motion now under consideration. In the end, after considering all of the summary judgment evidence, the court concludes that there is no disputed issue of material fact as to Plaintiff's excessive force claims or any of his other claims against these Defendants.

Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is "material" if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. International Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A "genuine dispute" exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

## Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes a person to be deprived of a federally protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe County*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Accordingly, the court will consider each of the rights of which Plaintiff claims he was deprived by one or more defendants.

3

*Excessive Force*

In addressing an excessive use of force claim, analysis begins by identifying the specific constitutional right allegedly infringed upon by the challenged application of force. *Graham v. Connor*, 490 U.S. 386 (1992). The claim of a convicted prisoner, such as Plaintiff, is judged against the Eighth Amendment standard set out in *Hudson v. McMillian*, 503 U.S. 1 (1992). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Several factors are relevant in determining whether the force used was excessive: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9, *quoting Whitley*, 475 U.S. at 327; *see Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (spraying inmate with a fire extinguisher after the fire was out was a de minimis use of physical force and was not repugnant to the conscience of mankind where the inmate suffered no physical injury).

In most cases, the court must view the facts in the light most favorable to the non-moving party if there is a genuine dispute as to the material facts. *Scott v. Harris*, 550 U.S. 372, 378-80 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by

4

the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380.

In this case, defendants' motion was accompanied by the use of force report and a twenty-five-minute DVD that captured the entire incident. (Doc. #24-1, Doc. #58).[2] The use of force report sets out that plaintiff refused to relinquish his hand restraints after he was moved to a new cell in administrative segregation. He slipped his left hand out of the restraints, opened the restraints, and then threatened to hurt a staff member. A five-man team, which included defendants Kuykendall, Dees, and Manns, was assembled. Defendant Kuykendall obtained approval from his supervisor to use the force necessary to remove the hand restraints from plaintiff, and medical staff was consulted to determine whether plaintiff had a medical condition that contraindicated the use of chemical agents.

The DVD shows that plaintiff had covered his cell windows, which obstructed visibility into his cell. Plaintiff refused to comply with repeated orders to submit to relinquish the hand restraints. Plaintiff continued to disregard the orders, and defendant Kuykendall sprayed chemical agents into the cell. Defendant Kuykendall again ordered plaintiff to relinquish the hand restraints. Plaintiff made no indication that he would comply with the order, and defendant Kuykendall sprayed chemical agents into the cell a second time. After plaintiff continued to disobey orders to relinquish the hand restraints, defendant Kuykendall sprayed the chemical agent a third time.

---

[2]To avoid confusion, the court notes that counsel for the three Defendants who filed this motion marked the entire Use of Force Report, including the DVD as "Exhibit A" to the motion. The written report with attached statements was electronically filed as Doc. # 24-1. The DVD itself is in the custody of the Lufkin Clerk's office. Doc. 58. Defendant Flowers filed the same set of documents, but labeled various parts of the file with several exhibit numbers so that in his motion the DVD is labeled as Exhibit D. Compare records affidavits for both motions, Doc. #24-1 at 2 with Doc. # 28-4 at 2.

Plaintiff continued to refuse orders to relinquish the hand restraints, and defendant Kuykendall and the five-man team entered plaintiff's cell. The DVD shows plaintiff struggled as the defendants entered his cell and attempted to gain control of him. Plaintiff had the restraints open in his hand with a sock wrapped around the restraints and his hand "so that the ratchet stuck out of his fist" (Doc. #24-1 at 8) "in such a manner that the restraints could be used to stab the officers." (Doc. #24-1 at 4) While plaintiff was struggling and striking at the officers with the cuffs, defendant Kuykendall struck plaintiff with a riot baton. (Doc. #24-1 at 8). The defendants pushed plaintiff against the back wall of his cell, which resulted in plaintiff striking his head on a shelf and the edge of his bunk as they took him to the ground. Plaintiff continued to struggle on the ground as the defendants attempted to restrain him. After several seconds, plaintiff stopped struggling, the defendants applied hand restraints, and they escorted him to the infirmary. The DVD ends as plaintiff is receiving medical attention in the infirmary.

Plaintiff argues that the use of force was unprovoked, but the summary judgment evidence disproves this argument. Applying the *Hudson* factors, it is clear that there was a need for force. Plaintiff was causing a disruption by refusing to obey repeated orders to relinquish the hand restraints and by forcibly resisting the extraction team. Defendant Kuykendall was concerned that plaintiff would use the hand restraints as a weapon. This is not a far-fetched concern. A single blow from handcuffs used as "brass knuckles" to the temple, throat, eye, nose, teeth, or the bones of cheek or jaw, could result in serious disfiguring injury, loss of sight, and even death. Plaintiff had ignored verbal orders and three applications of chemical spray. The officers were faced with a choice between allowing an inmate to retain restraints to use as a weapon or using force to subdue Plaintiff and retrieve the hand restraints.

6

Plaintiff had numerous opportunities to comply with defendant Kuykendall's orders and thus avoid the need to use force. He could have surrendered when the officers entered his cell. The amount of force used was minimal in light of the need to retrieve the hand restraints from plaintiff and restore order. Plaintiff sustained injuries to his face, but the DVD shows that the defendants did not act maliciously or sadistically to cause plaintiff harm. To the contrary, the defendants acted in a professional manner, using sufficient, but not excessive, force to resolve the situation created by the plaintiff, while at the same time striving to prevent injury to an officer.

There is no genuine dispute of material fact regarding the circumstances surrounding the use of force. Analyzed in light of the *Hudson* factors, the evidence before the court, including the DVD, establishes that Defendants did not use excessive force against Plaintiff; they are entitled to summary judgment on Plaintiff's claims against them.

*Qualified Immunity*

Alternatively, Defendants are entitled to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As set out in the "Excessive Force" section above, based on the summary judgment

7

evidence before the court, there is no genuine dispute as to any material fact concerning the actions of Plaintiff that resulted in the need to use force, or concerning the amount of force that was used. Reasonable officials in the position of Defendants should have been aware of the law as outlined in *Hudson,* and of the factors to be used in evaluating that use of force as stated in *Baldwin v. Stalder*. These officers were struggling with a recalcitrant prisoner who had handcuffs that could be used as a dangerous weapon. Even if a higher court were to decide, after review of the summary judgment evidence, including the DVD, that some action of one or more defendants should be considered excessive force, the basis for such a determination would not have been clearly established law at the time of the incident. Defendants acted in accordance with the established law at the time and they would be entitled to qualified immunity. *See Hudson*, 503 U.S. at 9.

*Fourth and Fourteenth Amendment Claims*

In his Brief in Support of the Complaint, Plaintiff makes a general claim of violation of Fourth and Fourteenth Amendment rights. (Doc. #3 at 14). The statements are conclusory and unsupported by specific allegations of fact. As noted, Plaintiff filed no response to these Defendants' motion for summary judgment. He also failed to address these claims in his responses to Defendant Flowers's motion for summary judgment. (Doc. ## 52, 53 and 54). Defendants are entitled to judgment on these claims.

*Official Capacity*

To the extent Plaintiff is making a claim against Defendants in their official capacities, they are protected from suit by the Eleventh Amendment. A suit for damages against a state official acting in his official capacity is not a suit against that individual but a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, a state actor acting in his or her official capacity is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S.

8

58, 71 (1989). This claim will be dismissed.

*Declaratory and Injunctive Relief*

In his Complaint, Plaintiff seeks declaratory relief against Defendants, but does not specify what declaratory relief he is seeking. (Doc. #3 at 13). Plaintiff also seeks a preliminary and permanent injunction "ordering defendants to stop all forms of retaliations and hindrances to the filing of this complaint." *Id*. at 15. To the extent Plaintiff seeks injunctive relief, he has failed to establish how this would meet the requirements under the Prison Litigation Reform Act, or how it relates to his claims. Plaintiff has failed to demonstrate past or current wrongdoing. Because injunctions regulate future conduct, "a party seeking injunctive relief must allege ... a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Van Winkle v. Pinecroft Ctr.* L.P., 2017 WL 3648477, at *6 (S.D. Tex. Aug. 23, 2017) (quoting *Wooden v. Bd. of Regents Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001)). Both claims will be dismissed.

ORDER

The motion for summary judgment of defendants John Kuykendall, Michael Dees, Charles Manns, Jr. (Doc. #24) is **GRANTED**. All claims against all Defendants having been disposed of, a final judgment will be entered in accordance with this Memorandum Opinion and the previous orders entered relating to claims against other Defendants.

So **ORDERED** and **SIGNED  March 30, 2020.**

_____
Ron Clark, Senior District Judge